**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:13-cv-1922-CMA-CBS**

WILLIE RICHARDSON and
DOLORES RICHARDSON

        Plaintiffs,

  v.

MEDTRONIC, INC., a Minnesota corporation,
MEDTRONIC SOFAMOR DANEK USA, INC., a Tennessee corporation;
MIRO SHULLA, an individual; and
DOES 1 through 10,

        Defendants.

---

**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY-STORED INFORMATION**

---

      This Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information shall be the governing document by which the parties and the Court manage the production of documents and data, including electronically stored information ("ESI") in this action. This Stipulation and Proposed Order shall govern all parties to these proceedings and all parties shall be under an obligation to take reasonable steps to comply herewith. The parties and the Court recognize that this Stipulation and Proposed Order is based on facts and circumstances as they are currently known to each party, that the discovery process is iterative, and that additions and modifications to this Stipulation and Proposed Order may become necessary as more information becomes known to the parties. Nothing in this Stipulation and Proposed Order will be interpreted to require disclosure of documents or information protected from disclosure

by the attorney-client privilege, work-product doctrine or any other applicable privilege or immunity. All parties preserve such privileges and there is no intent through either this Stipulation and Proposed Order or the production of documents or information hereunder to waive or weaken such privileges.

## I.   IDENTIFICATION PROTOCOL

1.   **Custodians**: Within seven (7) days of the entry of this Order, the parties will exchange lists of document custodians from whom they propose to collect potentially responsive documents.  Counsel for the parties will meet and confer within ten (10) days of entry of this Order.  During this meet and confer, the parties will, to the extent such information is currently available, describe each individual's (a) current or former job title; (b) location or division; and (c) the individual's dates of employment.  During the meet and confer, the parties may propose modifications to other parties' custodian lists. The parties must attempt to resolve any disputes regarding proposed modifications to custodian lists through a meet and confer process in accordance with Local Rule 7.1 and the Sedona Conference's "Cooperation Proclamation" to which this Court has instructed the parties to abide.  If the parties are unable to resolve a dispute, the parties may present the issue to the Court for resolution.

2.   After the production of ESI has commenced, but no later than sixty (60) days before the close of fact discovery, the parties may, upon a showing of good cause, propose additions to the other parties' custodian lists.  The parties must attempt to resolve any disputes regarding proposed additions through a meet and confer process in accordance with Local Rule 7.1.  If the parties are unable to resolve a dispute, the parties may present the issue to the Court for resolution and to jointly request an expedited briefing schedule to do so if necessary.  Any joint stipulation regarding proposed additional custodians must notice a hearing date no later than ten (10) days prior to the close of fact discovery.  If the Court orders any additional

production and that order is entered ten (10) days or less before the deadline for the close of fact discovery, the parties agree to jointly request a limited extension of that deadline to allow time for any required production of documents. Nothing herein precludes any party from arguing that additional time is necessary.

        3.       **Information Systems**: To facilitate the production of ESI and to provide the parties with an understanding of how reasonably accessible electronic information is stored and how it can be retrieved, within fourteen (14) days of the entry of the order, the parties agree to exchange information in writing regarding sources of potentially relevant ESI, and the extent to which those sources are reasonably accessible. Within fourteen (14) days of the aforementioned exchange, the parties shall meet and confer regarding the parties' computer information systems, network and shared drives that may contain relevant ESI. The parties further reserve the right to raise the issue with one another, if needed, of where potentially discoverable reasonably accessible ESI may reside, the dates for which active ESI and information is available (to the extent that information is currently available), and the methods available to search these sources. The parties also agree to reserve the right to raise the issues with one another, if needed, of backup, legacy, historic, archived, or retired systems, separate servers, CD-ROMs, tapes, optical disks, etc. where ESI may be stored, including categories of files deemed "not reasonably accessible" which may contain discoverable ESI, the form in which the ESI is maintained on these systems, why any such documents are not reasonably accessible, and the methods available for accessing the ESI on these systems. The parties shall endeavor to come to an agreement regarding the information systems from which each party will collect and produce ESI. If the parties are unable to do so, they may present the issue for resolution by the Court in accordance with Local Rule 7.1.

4. **Keyword Search Terms and Technology Assisted Review**:

a. Within fourteen (14) days of entry of this Order, the parties shall exchange lists of keyword search terms they propose to use to search for responsive documents. Such terms may include wildcards, commonly used business terms, abbreviations, alternate spellings, alternative or previous names used to refer to particular groups, processes, categories, procedures, and databases reasonably known to the parties that are likely to yield relevant and responsive information relevant to the claims and defenses in this litigation, while seeking to eliminate most irrelevant documents and information. The parties must also provide written information regarding the use of any other advanced culling techniques and/or technology assisted review processes they propose to employ in connection with their review and production of documents in this matter.

b. Within fourteen (14) days of exchanging lists of keyword search terms referenced in paragraph 4.a. above, the parties agree to meet and confer to discuss the use of agreed-upon keyword search terms as well as the potential use of other advanced culling techniques and/or technology assisted review processes in connection with the review and production of documents in this matter identified pursuant to subsection (a), above.

c. Within fourteen (14) days of meeting and conferring to discuss the use of agreed-upon key word searches, as referenced in paragraph 4.b. above, the parties shall exchange any proposed edits and/or additions to the proposed lists of search terms and any proposed use of advanced culling techniques and/or technology assisted review processes. The parties shall endeavor to come to an agreement regarding proposed keyword search terms. The parties will also endeavor to come to an agreement regarding whether and how to use other advanced culling techniques and/or technology assisted review processes. If the parties are

unable to do so, they may present any issues for resolution by the Court in accordance with Local Rule 7.1.

          d.      After the production of ESI has commenced, but no later than sixty (60) days before the close of fact discovery, the parties may, for good cause, propose modifications to the keyword search terms or processes for advanced culling techniques or technology assisted review. The volume of documents for review that a particular search term appears likely to return (based on sampling conducted by the parties) shall be considered in determining whether there is good cause for modification, as shall the importance of the term, the timeliness of the request, and whether there are viable alternative terms. The parties must attempt to resolve any disputes regarding proposed modifications through a meet and confer process in accordance with Local Rule 7.1. If the parties are unable to resolve a dispute, they may present the issue to the Court for resolution.

    5.    **Document Requests**: The parties shall meet and confer within seven (7) days of the date of entry of this order, with respect to whether, or to what extent, the obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by producing responsive, non-privileged documents that are captured by using the agreed-upon keyword search terms, as well as any agreed-upon use of other advanced culling techniques and/or technology assisted review processes, applied to agreed-upon custodians and agreed-upon computer systems and/or servers, augmented by manual review as the parties may deem appropriate.  Nothing in this Order shall be construed to waive the parties' right to object to the scope of particular discovery requests or to review their own documents for responsiveness or privilege.  The parties also further agree to undertake reasonable efforts to

produce identifiable categories of responsive, non-privileged documents not captured by the search terms, subject to the meet and confer described at the beginning of this paragraph.

## II.     Production Protocol

6.      Hard-copy Documents: The parties shall produce non-duplicative (as defined in Paragraph 16) responsive hard copy documents in single-page black and white TIFF format (300 DPI resolution, Group IV compression); the documents should be unitized as they were maintained in the regular course of business (i.e., contain correct document breaks). A producing party may produce color hard-copy documents as black-and-white images; where color is material to the interpretation of the document, the receiving party may request that the document be produced in color (color documents will be produced as PDFs). The producing party shall also provide document level OCR text files to accompany the TIFF format production. Each document's electronic image will convey the same information and image as the original document. Any documents that present imaging or formatting problems will be promptly identified and the parties may meet and confer in an attempt to resolve any problems that the receiving party believes are material. In connection with the production of hard copy document images, the producing party shall supply to the receiving party, if known, the following information in Concordance (.DAT) load files, including Opticon/Concordance Image load files:

   a.   Document source (name of custodian or other source information about where the document originated)

   b.   Bates Begin (beginning production number)

   c.   Bates End (ending production number)

   d.   Page count

   e.   Confidential Properties (populated with the confidentiality status).

    f. Redaction Properties.  Populated with the redaction status.  For documents that are produced with redactions, each redaction will contain a box with the word "Redacted."

  7. **ESI Other Than Email (excluding structured data)**: The parties shall produce non-electronic mail ESI originally maintained as ESI in single-page black and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format with the following metadata fields in standard Concordance load files, including Concordance (.DAT) load files, including Opticon/Concordance Image load files, with the metadata below, except that Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), media files (e.g., video and audio files) and presentation files, such as PowerPoint files (.ppt), shall be produced in native format unless they require redaction, in which case such documents shall be produced in TIFF format as set forth herein or in another agreed-upon format.  The parties shall meet and confer regarding the format of production for databases or other document types where one or both parties deem that conversion to TIFF format will be unreasonably burdensome and/or not useful.  The parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses should a reasonable need for the production of such files in native format arise. The load files should contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input):

    a. Source (name of custodian or source where the document originated)

    b. Author (author of file from properties)

    c. Doc Title (title of file from properties)

    d. Doc Subject (subject of file from properties)

    e. Created Date (date the file was created)

   f. Created Time (time the file was created)

   g. Last Modified Date (date the file was last modified)

   h. Last Saved By (name of user who last saved the file)

   i. File Name (original name of the file)

   j. File Ext (extension for the file)

   k. MD5 Hash (or equivalent)

   l. Bates Begin (beginning production number)

   m. Bates End (ending production number)

   n. A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT)

   o. A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT)

   p. Attachment Name (original file name of all attachments to a parent document)

   q. Page count

   r. Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

   s. Confidential Properties (populated with the confidentiality status)

   t. Redaction Properties (populated with the redaction status). For documents that are produced with redactions, each redaction will contain a black box with the word "Redacted" such that OCR text of the document will enable searching for "redacted" and locating the precise places where the redaction was done. All files that are redacted will be provided in TIFF format only and the only text provided is that which is OCRed.

1139156.1

u. The Full Path (full path location to where the file originally resided) need not be included in the load file, but should be preserved, if available, for potential provision upon reasonable request.

8. **Electronic mail**: The parties shall produce electronic mail in single-page black and white TIFF format (300 DPI resolution, Group IV compression) along with the corresponding document-level extracted text with the following metadata fields in standard Concordance (.DAT) load files, including Opticon/Concordance Image load files, except that Excel spreadsheet attachments (.xls, .xlsx), comma delimited text file attachments (.csv), media file attachments (e.g., video and audio files), and presentation file attachments, such as PowerPoint files (.ppt), shall be produced in native format unless they require redaction, in which case such documents shall be produced in TIFF format as set forth herein or in another agreed-upon format.  The parties shall meet and confer regarding the format of production for databases or other document types where one or both parties deem that conversion to TIFF format will be unreasonably burdensome and/or not useful.   The parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses should a reasonable need for the production of such files in native format arise. The load files should contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input):

a. Custodian (name of custodian where the document originated)

b. Author (From field)

c. CC

d. BCC

e. Recipient (To field)

   f. Subject (subject line of the email)

   g. MD5 Hash (or equivalent)

   h. Date Sent (date the email was sent)

   i. Date Received (date the email was received)

   j. File Ext (extension for the file)

   k. Bates Begin (beginning production number)

   l. Bates End (ending production number)

   m. Attachment Name (original file name of all attachments to a parent document)

   n. A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT).

   o. A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT).

   p. Page count

   q. Confidential Properties (populated with the confidentiality status).

   r. Redaction Properties. For documents that are produced with redactions, each redaction will contain a box with the word "Redacted" such that OCR text of the document will enable searching for "redacted" and locating the precise places where the redaction was done.

   s. Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

  9. Electronic mail shall generally be produced along with all relevant attachments in sequential order as part of a family, maintaining the parent-child relationship, to the extent the

message or any attachment is responsive and not privileged. The parties may meet and confer regarding exceptions to this protocol where appropriate (e.g. where a responsive email or attachment is grouped with large volumes of irrelevant documents or attachments). Any emails or attachments to emails withheld on privilege grounds will be shown on a privilege log to be provided within a reasonable time period with control numbers assigned by the producing party. Privilege logs are to conform to the requirements in Paragraphs 22-26 below; this paragraph imposes no additional obligations on the parties with respect to the content and format of privilege logs. To the extent the producing party withholds any attachments on grounds of privilege, the documents shall, at the producing party's option, either: (A) be Bates numbered in order in sequence with all attachments and the withheld documents shown on a privilege log with corresponding Bates numbers; or (B) include placeholders identifying the withheld document on a privilege log with control numbers assigned by the producing party. This procedure is without prejudice to any challenges brought regarding documents withheld by the producing party.

10. All compressed or zipped ESI shall be unzipped or decompressed during processing to the extent reasonably feasible. To the extent an electronic file contains embedded files, such files shall generally be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship.

11. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" (stamped) onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document, or included in the document file path in regard to native documents. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable). The

confidential legend shall be "burned" (stamped) into the documents image at a location that does not obliterate or obscure any information from the source document.

12. Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ".TIF." Any native documents shall be named with the Beginning Bates number of the document.

13. A document level text file will be provided containing the extracted text (or OCR for documents where no extracted text exists). The file will be named after the Beginning Bates number of each document. Where a document contains redactions, only OCR text will be provided. The Concordance (.DAT) load file shall include a path to the document-level text files and shall not contain the extracted text/OCR itself.

14. If technologically feasible, a report listing the exception documents included in the production shall be supplied on a per production volume basis. To the extent that any party believes, after production has commenced, that additional information regarding exception documents is necessary, the parties reserve the right to revisit this issue and, if necessary, seek amendment of this paragraph after conducting a meet and confer session to resolve any issues.

15. Files to be processed may be identified through the use of an inclusionary list of file types that typically contain meaningful user-created data. The following categories of electronic files may be specifically excluded from collection, review and production:

  a. System or executable files (.exe, .dll, etc.); and

  b. ESI or data with a hash value that matches a value on the list(s) of known operating system and application files provided by the National Software Reference Library ("NSRL"), based out of the National Institute of Standards in Technology ("NIST").

c. ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including but not limited to: ani; bat; c; cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; sys; tag; ttf; and xp.

16. In order to reduce the volume of documents reviewed and produced, each party shall de-duplicate ESI using the MD5 hash value vertically (within custodians) and may de-duplicate ESI, if technologically feasible, horizontally (across custodians), except that Plaintiffs shall not perform horizontal de-duping across custodians from different Plaintiffs. The de-duplicated originals and their associated metadata shall be securely retained such that reports containing relevant associated metadata about the documents can be made available upon reasonable request. Nothing in this Order shall preclude the parties from further meet and confer on the scope of de- duplication.

17. In order to reduce the volume of documents reviewed and produced, each party may use accepted email threading technology to exclude from production "lesser included" email chains provided that at least one copy of every non-privileged email in the chain is being produced, with the longest inclusive chain or otherwise.  To the extent that any party believes, after production has commenced, that the threading technology in use by another party has resulted in the omission of responsive e-mails, the parties reserve the right to revisit this issue and, if necessary, seek amendment of this paragraph after conducting a meet and confer session to resolve any issues on the threading technology.

18. Where color is material to the interpretation of ESI and upon reasonable request, the receiving party may request that the ESI be produced in color.

19. The parties shall, upon reasonable request, make native format copies of any produced, unredacted document not otherwise required to be produced in native format under this Protocol available for inspection and copying. The party requesting the inspection and copying shall bear the cost of any such request. The Medtronic Defendants reserve the right to object to producing any ESI in native format if they believe it necessary to protect trade secret or sensitive business information. The parties will revisit this issue and attempt to reach agreement once a Protective Order is in place.

20. For any productions made prior to entry of this Order, the producing party shall supply, in a reasonably prompt manner and where practicable, load files that comply with the provisions of the Order.

21. Structured data. Within twenty-eight (28) days of the entry of this Order, the parties agree to meet and confer regarding the production of structured data (i.e., information stored in scheduling programs, accounting systems, mapping systems, or proprietary or other databases such as Access, Oracle, or Microsoft SQL Server). The parties will endeavor to agree upon the manner in which structured data will be produced. If agreement cannot be reached after the meet and confer, the parties may submit any issues for resolution by the Court in accordance with Local Rule 7.1.

### III.  PRIVILEGE LOGS

22. The parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming. To limit the cost of a privilege review and make document production more efficient, the parties agree to use the protocols described below with respect to handling responsive documents that may include privileged information.

23. The parties need not identify, on any privilege or work product log in response to document requests, privileged documents constituting:


        a.     communications between any party or parties and counsel for that party or parties that (a) were for the purposes of litigating this case, or were in anticipation of litigation regarding the allegations made by the Plaintiffs in this litigation; (b) postdate the establishment of an attorney-client relationship between counsel and the party; and (c) were not disclosed to anyone who, at the time of the disclosure, was a third party to the attorney-client relationship;

        b.     communications solely between counsel for Plaintiffs, or communications solely between counsel for defendants, that postdate the establishment of an attorney-client relationship between each such attorney and his or her client(s));

        c.     communications between attorneys or their agents and litigation experts or consultants; and

        d.     documents created by then-current counsel (or by any employee or agent of then-current counsel) for the purpose of litigating this case, or in anticipation of litigation relating to Plaintiffs' allegations in this case, and not disclosed to anybody who, at the time of the disclosure, was not a client of the firm creating the document at issue, an attorney for aligned parties in this case or those attorneys' employees, or a consultant or expert described in sub-paragraph (c) above.

24.    Neither party will treat the failure to log such documents as a waiver of any privilege or protection.

25.    Privilege or protection claims as to communications between a party or parties and counsel may initially be logged by category, provided that the log includes sufficient information to evaluate or challenge any claim of privilege or protection. If any party disagrees that the log provides sufficient information to evaluate or challenge the claim of privilege or

protection, that party may request further information, and the party claiming the privilege or protection must provide the information required by Rule 26(b)(5) or other applicable law.

26. Pursuant to Federal Rule of Evidence 502(d), the disclosure of a communication or information covered by the attorney-client privilege or work-product protection does not operate as a waiver of any such privilege or protection as to the disclosed communication or information, nor does it operate as a waiver with respect to disclosed or undisclosed communications or information concerning the same or similar subject matter.

## IV. **LIMITATIONS**

27. Nothing in this Stipulation and Proposed Order shall prohibit a party from seeking modification of any of its terms either by stipulation or by application to the Court. Should any party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the parties will meet and confer to attempt to resolve any dispute before seeking Court intervention.

28. This Stipulation and Proposed Order relates to the general protocol of identifying and producing hard copy documents and ESI, and is not otherwise intended to alter the parties' respective rights and obligations under the Federal Rules of Civil Procedure. The parties may stipulate or any party may bring a motion to modify or clarify the application of this Stipulation and Proposed Order to a particular document or set of documents, particular set of ESI, or otherwise.

**SO STIPULATED.**

Dated:  November 1, 2013                             Respectfully submitted,

By:  */s/ Kent L. Klaudt*
     Kent L. Klaudt

Kent L. Klaudt
Cecilia Han
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Wendy R. Fleishman, Esq.
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Gerald P. McDermott, Esq.
MCDERMOTT & MCDERMOTT, LLP
1890 Gaylord Street
Denver, CO  80206
Telephone:  303-399-6037
Facsimile:  303-322-3423

*Attorneys for Plaintiffs Willie Richardson and Dolores Richardson*

Dated:  November 1, 2013                             By:  */s/ David G.Palmer*

David G. Palmer
GREENBERG TRAURIG
palmerdg@gtlaw.com
1200 17th Street
Suite 2400
Denver, CO  80202
Telephone:  303.572.6500
Facsimile:  303.572.6540

-18-

        Michael K. Brown
        REED SMITH LLP
        355 S. Grand Ave. Suite 2900
        Los Angeles, CA 90071
        Telephone:  213.457.8000
        Facsimile:  213.457 8080

*Attorneys for Defendants Medtronic, Inc. and Medtronic Sofamor Danek, USA, Inc.*

**IT IS SO ORDERED.**

Dated:  November 19, 2013

        _____
        United States Magistrate Judge
        Craig B. Shaffer